IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, an Illinois corporation, | ) ) ) | CV. NO. 07-00565 DAE KSC |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| ADIR GADIEL and EMANUEL GADIEL, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On November 7, 2008, the Court heard Plaintiff's Motion for Summary Judgment ("Motion") (Doc. # 19). David R. Harada-Stone, Esq., appeared at the hearing on behalf of Plaintiff; Kevin W. Herring, Esq., and Michael R. Vieira, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Plaintiff's Motion.

BACKGROUND

In the matter at bar, Plaintiff seeks a ruling that it has no duty to defend or indemnify Defendants in a case entitled Scott Argus v. Adir Gadiel and Emanuel Gadiel, Civil No. 05-1-1620 (the "tort case"), which is pending in the

Circuit Court of the First Circuit of the State of Hawai`i ("State court"). The tort case arises from a landlord-tenant relationship between Argus and Defendants. Defendant Adir Gadiel ("Adir") was the owner of a residential property located at 3771 Leahi Avenue (the "property") for which Plaintiff issued a Homeowners' Insurance Policy (the "Policy").

At the time of the events alleged in the tort case, Adir was the named insured on the Policy.[1] The Policy requires Plaintiff to "pay damages which an insured person becomes legally obligated to pay because of <u>bodily injury</u> or <u>property damage</u> arising from an <u>occurrence</u> to which this policy applies[.]" (The Policy, ex. A at p. 26, attached to Pl.'s Motion (emphasis added).) The Policy defines "bodily injury" as "physical harm to the body, including sickness or disease, and resulting death . . . ." (<u>Id.</u> at 2.) "Property damages" means "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." (<u>Id.</u> at 3.) "Occurrence" means "an accident, including continuance or repeated exposure to substantially the same general harmful conditions during the policy period, which results in bodily injury or property damage." (<u>Id.</u> at 3)  Finally, the Policy excludes coverage for bodily

---

[1] Emanuel Gadiel ("Emanuel"), Adir's father, asserts that he too was insured under the Policy. Plaintiff disputes this assertion but assumes for purposes of the Motion that Emanuel was insured.

injury or property damage "intended by, or which may reasonably be expected to result from the intentional or criminal acts of, any insured person."

On February 8, 2006, Argus filed the tort case[2] against Defendants, alleging that: (1) he rented a residential premises from Adir in April 2005; (2) Emanuel was co-owner of the property and acted as agent for Adir in connection with the property; (3) Emanuel falsely accused Argus and began a campaign to harass and drive him from the property; (4) Defendants made false and defamatory oral and written statements about Argus; and (5) Emanuel ran at Argus with a rake and threatened to kill him on June 2, 2005 (the "June 2, 2005 incident").[3]  Argus alleges numerous physical and mental ailments[4] as a result of these actions and

---

[2] Argus subsequently filed a First Amended Complaint.  For purposes of this Order, all references to the allegations in the tort case are to the First Amended Complaint.

[3] In response, Defendants contend that upon taking possession of the cottage, Argus regularly complained about the unit, the neighbors, and the surrounding tropical foliage, demanded daily maid service and claimed an entitlement to stay on the property beyond the termination of the lease.  Defendants further allege that Argus attempted to bully Emanuel into encouraging Adir to allow Argus to remain on the property and that after Argus was notified that he must vacate the property his harassment of Emanuel intensified.  Argus allegedly videotaped and photographed Emanuel, entered portions of the property without permission, and sought to provoke confrontations.

[4] These ailments include chronic Irritable Bowel Syndrome, loss of sleep, frequent headaches, stress with physical and emotional consequences, abdominal cramps, intermittent diarrhea, and recurring tinnitus.  Argus additionally alleges
(continued...)

asserts claims for defamation, injunctive relief, tortious interference with prospective economic relationship, intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery.  Defendants tendered their defense of the tort case to Plaintiff pursuant to the Policy and requested that Plaintiff reimburse them for attorneys' fees and costs incurred prior to their tender.  Plaintiff is currently providing a defense to Defendants under a reservation of rights.

On November 16, 2007, Plaintiff filed a complaint for declaratory relief in this action.  On January 14, 2008, the State court granted Adir's motion for summary judgment as to all counts in the tort case.  The State court, however, did not enter final judgment and Argus' claims against Emanuel remain.

On August 1, 2008, Plaintiff filed the instant Motion.  On August 20, 2008, Defendants moved for a stay of these proceedings pending resolution of the tort case (Doc. # 27).  The Court denied the motion for stay on October 8, 2008 (Doc. # 40).

On October 9, 2008, Defendants opposed the Motion (Doc. # 37), to which Plaintiffs replied on October 16, 2008 (Doc. # 41).

---

[4](...continued)
that his interactions with Defendants negatively impacted his relationship with his franchisor and damaged his business.

asserts claims for defamation, injunctive relief, tortious interference with prospective economic relationship, intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery.  Defendants tendered their defense of the tort case to Plaintiff pursuant to the Policy and requested that Plaintiff reimburse them for attorneys' fees and costs incurred prior to their tender.  Plaintiff is currently providing a defense to Defendants under a reservation of rights.

On November 16, 2007, Plaintiff filed a complaint for declaratory relief in this action.  On January 14, 2008, the State court granted Adir's motion for summary judgment as to all counts in the tort case.  The State court, however, did not enter final judgment and Argus' claims against Emanuel remain.

On August 1, 2008, Plaintiff filed the instant Motion.  On August 20, 2008, Defendants moved for a stay of these proceedings pending resolution of the tort case (Doc. # 27).  The Court denied the motion for stay on October 8, 2008 (Doc. # 40).

On October 9, 2008, Defendants opposed the Motion (Doc. # 37), to which Plaintiffs replied on October 16, 2008 (Doc. # 41).

---

[4](...continued)
that his interactions with Defendants negatively impacted his relationship with his franchisor and damaged his business.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial – usually, but not always, the defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

Plaintiff asserts the following arguments in support of its position that it has no duty to defend or indemnify Defendants in the tort case: (1) since the wrongful acts alleged in the tort case are intentional, there is no "occurrence" or "accident" within the meaning of the Policy; (2) Argus' complaint does not allege "bodily injury" or "property damage" within the meaning of the Policy; (3) the exclusion for intended or expected injury by any insured precludes coverage; and (4) Defendants are not entitled to reimbursement for their pre-tender defense costs.  After reviewing the relevant duty to defend standard, the Court addresses each of Plaintiff's arguments in turn.

Insurance policies are contracts and therefore "subject to the general rules of contract construction."  Tri-S Corp. v. West. World Ins. Co., 135 P.3d 82, 98 (Haw. 2006).  The language of a particular insurance policy determines the

scope of an insurers' duty to defend. Commerce & Indus. Ins. Co. v. Bank of Haw., 832 P.2d 733, 735 (Haw. 1992). Any ambiguity or doubts must be resolved in favor of the insured and against the insurer since "insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys." Tri-S Corp., 135 P.3d at 98.

The duty to defend arises whenever there is the mere potential for coverage. AIG Haw. Ins. Co., Inc. v. Smith, 891 P.2d 261, 265 (Haw. 1995). "In other words, the duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists, the insurer owes the insured a defense." Id. (citations, internal quotations, and brackets omitted). To determine whether this possibility exists, the court must review the allegations in the complaint in the underlying action. Id. "The duty to defend is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." Hawaiian Holiday Macadamia Nut Co., Inc. v. Industrial Indem. Co., 872 P.2d 230, 233 (Haw. 1994) (internal quotations omitted).

Whether there is a duty to defend is determined at the time the defense is tendered to the insurer. Dairy Road Partners v. Island Ins. Co., Ltd., 992 P.2d

8

93, 108-09 (Haw. 2000). "[W]hen the <u>facts</u> alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts (such as that the facts as alleged demonstrate 'negligent' rather than 'intentional' conduct) are insufficient to trigger the insurer's duty to defend." <u>Id.</u> at 112 (emphasis in original).

I. "Occurrence"

Plaintiff alleges that the Policy provides coverage for damages only when caused by an "occurrence," which is defined in relevant part under the Policy to mean an "accident."[5] As Argus alleges injuries resulting from intentional harassment, interference, defamation, and assault, and because a reasonable insured would have anticipated that harm would result from such actions, this conduct does not constitute an "occurrence" under either the Policy or Hawai`i law. Thus, the argument goes, Plaintiff has no duty to defend the tort case. In opposition, Defendants argue that, even assuming they committed the acts alleged by Argus, there is no evidence that Argus' injuries were the intended or foreseeable result of these acts when viewed from their perspective.

---

[5] The Policy does not define "accident."

In Hawai`i, "[t]he question of what is an 'accident' must be determined by addressing the question from the viewpoint of the insured." Hawaiian Holiday, 872 P.2d at 234. "[I]n order for the insurer to owe a duty to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions." Id. (citing AIG Hawaii Ins. Co., Inc. v. Estate of Caraang, 851 P.2d 321, 329 (Haw. 1993).

Argus alleges that he sustained bodily injury and property damage as a result of a variety of acts by Defendants including, but not limited to, the following: (1) making inaccurate and malicious reports to police; (2) sending Argus a letter terminating the lease; (3) sending Argus' franchisor a letter regarding Argus' behavior; and (4) the June 2, 2005 incident. (First Amended Complaint ("Complaint"), Ex. B ¶¶ 15-28, attached to Pl.'s Motion.)[6] Relying primarily on Hawaiian Ins. & Guaranty Co., Ltd. v. Blanco, 804 P.2d 876 (1990), Plaintiff argues that the Hawai`i Supreme Court has adopted an expansive definition of intentional conduct – one that does not require proof that the insured

---

[6] The Court notes that there is a lack of agreement amongst the parties as to which of Argus' allegations are relevant to the immediate discussion. Based on a careful review of the record, the Court finds that the allegedly defamatory statements and Emanuel's conduct during the June 2, 2005 incident form the crux of Argus' legal claims. As a result, the Court does not discuss the extraneous allegations from the tort case (e.g., that Defendants failed to clean rotting fruit from the property).

subjectively intended to cause the resulting harm – and, considering the allegations in this case, it is clear that no occurrence or accident is alleged. Plaintiff is incorrect.

In Blanco, injury resulted from the insured's intentional discharge of a shotgun, which the insured claimed was intended to frighten but not harm the victim. Id. at 881. The Hawai`i Supreme Court found that there was no accident, and thus no duty to defend, because bodily injury is a foreseeable result of firing a gun at a person even if there was no intent to injure. Id. Here, in contrast, the record before the Court does not establish that the injuries of which Argus complains were the foreseeable result of the disputed conduct by Defendants, specifically that of Emanuel. In fact, with respect to the allegedly defamatory statements, Defendants have provided evidence that Emanuel believed these statements were factually accurate or represented his personal opinion of Argus. (Declaration of Emanuel Gadiel, ¶¶ 11-12, attached to Defs.' Opp.) It was therefore not foreseeable that such statements, if true, would result in harm to Argus or his property interests. Interpreting the evidence in a light favorable to and from the perspective of Defendants, there is at minimum a question of fact as to whether the allegedly defamatory statements constituted an "occurrence" under the Policy.

Similar reasoning applies to the allegations arising from the June 2, 2005 incident. The parties again dispute the circumstances surrounding this incident. However, the record before the Court indicates that Emanuel claims he acted in self-defense. (Id. ¶¶ 4-9.) While not precedential authority, the Court finds Allstate Ins. Co. v. Takeda, 243 F.2d 1100, 1106 (D. Haw. 2003), in which Judge Susan Oki Mollway analyzed the self-defense issue in the context of a similar insurance policy, instructive to the discussion here. In Takeda, an insured was alleged to have assaulted a person by striking him with a pole. Id. at 1102. Although the insured pled no contest to the criminal assault charge, he claimed in the civil action that he acted in self-defense. Id. Judge Mollway determined that a layperson reading the definition of "occurrence" would have no reason to think that an act of self-defense was necessarily excluded from that definition and, furthermore, "[n]othing in the policy suggests that an act of self-defense committed by an insured instinctively or out of necessity would fall outside the definition of 'occurrence.'" Id. at 1106.

This Court concurs in Judge Mollway's analysis. In short, one acting in defense of oneself does not necessarily intend to injure the body or property of another. Correspondingly, it is not foreseeable, when viewed from the perspective of Defendants, that Argus' alleged injuries from the June 2, 2005 incident would

arise out of defensive actions by Emanuel. Argus clearly alleges that Emanuel's actions were unjustified. If Emanuel did not act in self-defense, his actions during the June 2, 2005 incident may well fall beyond the scope of an "occurrence," meaning that Plaintiff would not bear the ultimate burden of indemnifying Defendants on this issue. At this juncture, however, construing the facts in a light favorable to Defendants, there is a question of fact as to whether Emanuel's actions constituted an "occurrence" and, as such, there remains a possibility of coverage under the Policy. Summary judgment is inappropriate.

II. "Bodily Injury" & "Property Damage"

Alternatively, Plaintiff contends that the Policy does not provide a duty to defend because the tort case does not allege any covered "bodily injury" or "property damage." With respect to "bodily injury," Plaintiff contends that Argus' complaint does not allege any facts that would show a physical injury to Argus. As the Policy limits coverage to claims for physical harm to the body, there is no duty to defend. In opposition, Defendants assert that a plain reading of the complaint reveals that Argus alleges that he suffered physical injuries, thus implicating Plaintiff's duty to defend. The Court agrees.

As discussed above, the language of the Policy determines the scope of Plaintiff's duty to defend. Commerce & Indus. Ins., 832 P.2d at 735. Here, the

13

Policy defines "bodily injury" as "physical harm to the body. . . ." (The Policy at 2.) The record clearly indicates that Argus alleges physical injury in the tort case. (Complaint ¶¶ 49, 52, 55 ("Plaintiff has sustained injuries and damages, including mental and physical injury and pain and suffering. . . .") (emphasis added).) Accordingly, Argus alleges bodily injury pursuant to the plain language of the Policy.

Plaintiff additionally contends that Argus does not allege sufficient facts demonstrating physical injury and, instead, merely asserts a claim for emotional distress. Even if true, this argument is irrelevant. For purposes of insurance coverage in Hawai`i, bodily injuries include emotional distress. See, e.g., First Ins. Co. of Hawaii, Ltd. v. Lawrence, 881 P.2d 489, 494 (Haw. 1994). As a result, even if the complaint in the tort case is read to invoke claims for emotional, as opposed to physical, injury, there is a possibility for coverage under the Policy. Correspondingly, Plaintiff has a duty to defend.

With respect to "property damage," Plaintiff argues that damage to intangible interests does not fall under the Policy's definition of this term. Defendants respond that Argus claims losses constituting "property damage" in accordance with the Policy.

The Court's careful review of the complaint in the tort case indicates that the only injury to property alleged by Argus is to intangible, not physical, interests. Argus claims: (1) injury to his reputation; (2) injury to his business (i.e. lost profits); and (3) injury to his business relationship with his franchisor. (Complaint ¶¶ 33, 37, 43-44.) Pursuant to the plain language of the Policy, which limits coverage for property damage to "tangible property," Argus' purported injuries are beyond the scope of the Policy. Regardless, where a suit raises a potential for coverage, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside of the policy's coverage. Pancakes of Hawaii, Inc. v. Pomare Properties Corp., 944 P.2d 83, 88 (Haw. 1997). As discussed above, Plaintiff has a duty to defend because a possibility of coverage exists pursuant to the Policy's definitions of "occurrence" and "bodily injury." Plaintiff therefore is obligated to defend notwithstanding the determination regarding the property damage claims.

III.  Intended/Expected Injury Exclusion

Assuming that Argus alleges potentially covered claims, Plaintiff avers that there is still no duty to defend because the Policy's intentional act exclusion prohibits coverage for bodily injury or property damage that was intended, or should have been expected, by any insured. According to Plaintiff,

this exclusion bars coverage for Defendants as they were alleged to have acted intentionally and should have expected that harm would result from their conduct.

As discussed above, there remains a question of fact as to Defendants' intent with respect to the incidents that form the basis of Argus' complaint. On this basis alone, summary judgment is precluded. Moreover, while the Hawai`i courts have not explicitly addressed the issue, the Court, in a ruling by Judge Alan C. Kay, has previously determined that self-defense is an exception to intentional act exclusions. See State Farm & Cas. Co. v. Poomaihealani, 667 F. Supp. 705, 708 (D. Haw. 1987) (holding that the insured's self-defense argument created a question of fact as to the applicability of the insurance policy's intentional acts exclusion). The Court adopts the reasoning set forth in Poomaihealani and finds that so long as there is a question of fact as to Emanuel's intent, there is a corresponding question of fact as to whether these actions are covered by the intentional acts exclusion. Lastly, the intentional acts exclusion does not bar coverage for conduct that does not require a finding of intent. Here, at least some of Argus' legal claims, including defamation and negligent infliction of emotional distress, do not require such intent and, therefore, potentially fall beyond the scope

of the exclusion.[7]  For these reasons, the intentional acts exclusion does not bar coverage as a matter of law.

IV.  <u>Reimbursement for Pre-Tender Defense Costs</u>

Even if Plaintiff has a duty to defend, Plaintiff asserts that it has no obligation to reimburse Defendants for their pre-tender attorneys' fees and costs because the Policy contains a "voluntary payments provision" that precludes such payments.  Furthermore, Plaintiff contends that Hawai`i law establishes that an insurer has a right to select counsel for an insured.  <u>Finley v. Home Ins. Co.</u>, 975 P.2d 1145, 1155 (Haw. 1998).  The insured may reject the insurer's choice of counsel and conduct its own defense but must bear responsibility for attorney's fees and costs associated with the defense.  <u>Id.</u>

The Motion does not explicitly identify what pre-tender costs are at issue here, the circumstances surrounding their incursion, or any cognizable legal

---

[7] For example, under Hawai`i case law, the four elements for a defamation claim are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher (actual malice where the plaintiff is a public figure); and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.  <u>Gonsalves v. Nissan Motor Corp. in Hawai`i, Ltd.</u>, 58 P.3d 1196, 1218 (Haw. 2002).

argument in support of Plaintiff's position that their reimbursement is precluded.[8] Instead, Plaintiff merely recites the "voluntary payments provision" language, potentially but not necessarily relevant Hawai`i law, and nondispositive case law from other jurisdictions. In short, Plaintiff fails to meet its burden of production as the moving party on a motion for summary judgment.

### CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, November 7, 2008.



David Alan Ezra
United States District Judge

Allstate Insurance Co. v. Adir Gadiel, et al., Civil No. 07-00565 DAE-KSC; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

[8] From Defendants' opposition, the Court gleans that Plaintiff is challenging costs incurred by Adir in responding to the tort case.